IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANTHONY MARQUEZ, JR.,<br><br>　　　　Defendant. | CR 07-0157-TUC-DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the Magistrate-Judge for hearing on pretrial motions. Hearing on defendant's Motion to Suppress was held on June 17, 2008. Upon consideration of the evidence and arguments of respective counsel, the magistrate recommends the District Court **deny** the Motion to Suppress.

**CHARGE:**

The two count indictment charges that on December 31, 2006, the defendant and his co-defendant conspired to possess marijuana (81 kilograms) with the intent to distribute and possessed that marijuana with the intent to distribute.

**MOTION TO SUPPRESS:**

Defendant argues the charges against him arise from an unlawful stop of his vehicle; therefore, all evidence must be suppressed.

*Testimony of Alex Bonilla*

Bonilla has been a Border Patrol Agent (BPA) since December, 2002. On December 31, 2006, he was on patrol duty from 2 p.m. until midnight. He was patrolling Federal Route 1 (FR 1)– which begins about one mile north of the Mexican border and proceeds north. Bonilla testified he usually patrols that area three or four times a week and has encountered a lot of alien and narcotic smuggling in the area.

Around 7 p.m. in the evening of December 31, 2007, he was completing a traffic stop at Milepost 13 on FR 1. Bonilla stated there are only two villages south of Milepost 13. At Milepost 10 is the village of Pioik comprising 10-15 houses. At Milepost 1 is the village of Menagers, comprising about 25 houses. There are no paved roads which feed into FR 1 south of Milepost 13. The roads that do feed into FR 1 are "pretty much bad shape roads" more suitable for off-road vehicles–like pickup trucks–than for compact vehicles; the defendant was driving a compact vehicle. At Milepost 13 the road has only two lanes (one in each direction) and is very narrow. Bonilla was concluding the traffic stop of a northbound vehicle and both his–a marked service vehicle-- and the other vehicle were parked halfway on the paved roadway and halfway onto the shoulder. Because there was a berm along the road they were not able to pull the vehicles further off the pavement. Bonilla stated his vehicle's emergency lights were on, including those on top.

Bonilla noticed a northbound vehicle approaching his location at about 55 mph which was the posted rate. He testified the vehicle caught his attention because its speed did not lessen as it approached him. The driver had to move into the southbound lane in order to pass the stopped vehicles. Bonilla stated persons passing when he is involved in a traffic stop will usually slow down, and turn and look in his direction. As the subject vehicle passed his location he noticed two persons in the front–the driver and a passenger. The vehicle did not slow down and the occupants did not look in his direction.

Bonilla concluded his traffic, returned to his vehicle, and continued northbound

1  in order to catch up with the suspect vehicle.  At that time his emergency were not on.
2  Traveling at about 60-65 mph, he caught up with vehicle and noticed "it was kind of riding
3  low [in the rear] for–having two people in the front only." His experience led him to believe
4  there might be bodies or cargo hidden in the rear of the vehicle.  Bonilla testified he ran a
5  check of the license plate and it came back registered to an address in Sacaton.  Bonilla stated
6  the area he was patrolling on that date is on the Tohono O'odham Indian Nation and usually
7  vehicles he observes in that area are registered out of Sells, Ajo, or Why.  He testified that
8  Sells is on the reservation; Ajo and Why are close to the area, but not on the reservation.
9  Bonilla also testified traffic is minimal in that area of FR 1 during the day and decreases even
10 more in the evening–sometimes no more than one vehicle per hour.

11        Bonilla testified that after he received information on the vehicle registration he
12 decided to stop the vehicle and activated his overhead lights at about Milepost 15 or 16.  The
13 vehicle slowed down, but traveled about a quarter of a mile before coming to a full stop.
14 Bonilla identified the defendant as the driver of the suspect vehicle.

15        On cross-examination Bonilla stated he and the defendant were traveling at 45-50
16 mph when Bonilla activated his overhead lights to signal the defendant to stop.  He
17 confirmed that one factor in his decision to stop the defendant was that the vehicle
18 registration was from Sacaton which he stated is "about 60 miles north." Asked about how
19 often he stops vehicles in the area of FR 1, Bonilla stated he does not stop every vehicle he
20 sees on FR 1 and some times does not even stop one vehicle daily.  He restated that in his
21 experience vehicles that pass him while he is engaged in a vehicle stop usually slow down
22 and "look at me, like making sure I'm safe, I'm not going to get in–in front of their vehicle
23 or anything like that." Bonilla stated it was not the defendant's speed as he passed that drew
24 his attention; rather it was because it was out of the ordinary for someone to not slow down
25 and "gawk" as they passed.  Bonilla testified the defendant was driving a compact Ford
26 vehicle; he could not say exactly the distance of the back bumper from the ground, only that
27
28

it seemed to be riding low. Bonilla stated there was nothing unusual about two people riding in a car on FR 1 at that time of evening.

**DISCUSSION:**

During the suppression hearing defense counsel specifically stated his motion was based upon the proposition that Bonilla was not justified in stopping the defendant's vehicle.

The search and seizure of a motorist suspected of criminal activity is analyzed according to the framework set out in *Terry v. Ohio,* 392 U.S.1 (1968). For a lawful investigative stop, the officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). In determining whether reasonable suspicion existed to justify an investigatory stop, a reviewing court is required to "look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrong doing." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (internal punctuation deleted). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them. *Id.* "In the context of Border Patrol [stops], the factors to be considered in determining whether 'reasonable suspicion' exists to justify stopping a vehicle include, but are not limited to: (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver...; (6) appearance or behavior of passengers; (7) model and appearance of the vehicle; and (8) officer experience. *United States v. Garcia-Barron,* 116 F.3d 1305, 1307 (9th Cir. 1997) (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 885 (1975).

In the present case, Bonilla stated the factors to support his "reasonable suspicion': he first observed the defendant about 13 miles north of the border in an area known for smuggling activities; in his experience it was unusual the driver did not slow down and "gawk" even though Bonilla had his emergency lights activated and the defendant

had to enter into the southbound lane of traffic pass the officer: the defendant's vehicle was riding low in the rear; and the vehicle registration was from Sacaton which Bonilla claimed was unusual in his experience.

Defense counsel argues the distance from the border is not significant here because Bonilla did not know for a fact the defendant had come from the border and he was first seen "miles from the border." He cites *United States v. Jimenez-Medina,* 173 F.3d 752 (9th Cir. 1999) to support his position, but that case is clearly distinguishable. The defendant in *Jimenez-Medina* was stopped on Interstate 10, in Arizona, at a point 130 miles north of the Mexican border. Without even considering that Interstate 10 is a more heavily traveled roadway than FR 1, the present defendant was first observed just 13 miles from the border which is considerably less than the distance in *Jimenez-Medina.*

During cross-examination Bonilla stated Sacaton was about 60 miles north of the reservation, but admitted he did not know its exact location or if it was on the reservation. Defense counsel then suggested that Sacaton is, in fact, on the reservation, and in his written motion he stated Bonilla "obviously failed to understand the connection between Sacaton and the Tohono O'odham reservation." Following the suppression hearing the magistrate consulted a map of Arizona and found that Sacaton is not located on the Tohono O'odham Nation. Neither during the suppression hearing nor in his written brief did defense counsel elaborate on any "connection" between Sacaton and the Tohono O'odham reservation.

Considering the factors listed by Bonilla and analyzing them in the context of the "totality of the circumstances", this court concludes that Border Patrol Agent Bonilla had reasonable suspicion to conduct an investigative stop of the defendant's vehicle.

**RECOMMENDATION:**

In view of the foregoing it is recommended that after its independent review of the record the District Court **DENY** the defendant's Motion to Suppress. This Report and Recommendation is being faxed to all counsel on this date. Each counsel may serve and file

1 objections within 10 days of today's date.  If objections are timely filed the party's right to
2 de novo review may be waived.  If objection are filed they should be directed to the District
3 Court by omitting the magistrate's initials from the caption, i.e., CR-07-0157 TUC-DCB.
4     DATED this 7th day of August, 2008.

*[signature]*
Glenda E. Edmonds
United States Magistrate Judge